REUTER v. NIXON STATE BANK.
(No. 6090.)

(Court of Civil Appeals of Texas.  San Antonio.  Nov. 20, 1918.)

1. PLEADING ⬷34(4) — CONSTRUING AGAINST PLEADER.

On special exception, ambiguity will be construed against pleader.

2. PLEADING ⬷21—INCONSISTENT ALLEGATION—SPECIAL EXCEPTIONS.

Allegation that board of directors of defendant bank approved all portions of preliminary sketches, prepared by plaintiff architect, being inconsistent with remainder of count to effect that plaintiff was directed to complete plans and specifications, in accordance with that portion only of preliminary schedule theretofore approved, trial court properly sustained special exception.

3. PLEADING ⬷34(3)—INFERENCES IN AID OF PLEADING.

There being no averment that cashier had authority to bind board of directors of defendant bank, or that board approved all sketches prepared by plaintiff architect, and authorized cashier to so inform plaintiff, it will not be inferred in the face of a special exception that the board of directors were bound.

4. BANKS AND BANKING ⬷105(3) — AUTHORITY OF CASHIER.

The cashier of a bank has apparent power to bind the bank in the usual financial business of the bank.

5. BANKS AND BANKING ⬷105(3)—"ORDINARY FINANCIAL BUSINESS OF BANK."

The building of a two-story brick building, or the making of a special contract for professional services of an architect, are not the ordinary financial business of a bank within the rule that cashier has apparent authority to bind the bank in such business.

6. BANKS AND BANKING ⬷105(3)—APPARENT AUTHORITY OF CASHIER.

It is not within the apparent scope of cashier's authority to speak for the board of directors.

7. CONTRACTS ⬷333(5) — FOR SERVICES OF ARCHITECT—PLEADING.

In suit for professional services rendered by plaintiff architect, petition *held* not to allege fully, clearly, and consistently what plaintiff had contracted to do, so that it was insufficient when tested by special exceptions.

8. CONTRACTS ⬷335(2) — PERFORMANCE — PLEADING.

In suit for professional services rendered by plaintiff architect, allegations of petition *held* not to show that plaintiff had fully performed his part of the contract.

Appeal from Gonzales County Court; J. C. Romberg, Judge.

Suit by H. A. Reuter against the Nixon State Bank. Special exceptions urged against the several allegations in plaintiff's first amended petition were sustained, the cause dismissed, and plaintiff appeals. Judgment affirmed.

Rainbolt & Midkiff, of Gonzales, and Clamp, Searcy & Clamp, of San Antonio, for appellant.

Harwood & Miller, of Gonzales, for appellee.

SWEARINGEN, J.  This is a suit by appellant, H. A. Reuter, against the Nixon State Bank to recover the agreed price stipulated in an oral contract for an architect's professional services.

Special exceptions urged against several allegations in appellant's first amended petition were sustained by the court and the cause dismissed.

It is contended in six assignments that there was error in sustaining the special exceptions, all of which present but one proposition for consideration, as suggested by counsel for appellant, which may be fairly indicated by the two questions: Do the allegations of the petition clearly and fully state the complete contract made with appellant? Do the allegations show that appellant fully performed his part of that contract?

The petition in three counts contains allegations concerning the contract. The first is that the Nixon State Bank acting through its president, D. N. Campbell, and its cashier, S. J. Elkins, engaged appellant's services as an architect, and employed him to prepare preliminary sketches for a two-story brick building, and through its officers agreed and obligated itself to pay appellant for his professional services as architect $3\frac{1}{2}$ per cent. of the estimated cost of the building, agreed to be $17,500. The second is that, in pursuance of said employment, appellant prepared the preliminary sketches and submitted said sketches to the bank for its approval through its board of directors, which board approved and ratified the contract made with appellant by the president and cashier of the bank, and at the same meeting of the directors of the bank employed appellant to make plans and specifications for the bank building, and agreed and promised to pay appellant, as compensation therefor, the sum of $3\frac{1}{2}$ per cent. of $17,500, which was the agreed estimated cost of the building; that the directors approved said preliminary sketches submitted by appellant with the exception of the "arrangement of the bank and the exterior and the exterior design," with reference to which the directors indicated that they would probably want some changes made, but directed plaintiff to proceed with the complete and detailed plans and specifications for said building, with the exception of the "arrangement of the bank and the exterior and exterior design." The third count alleges that, while appellant was preparing the complete plans and specifications for said building, Mr. S. J. Elkins, the cashier and a director of the bank, called at appellant's office and stated to him that the directors of the bank had concluded not to make any changes in the "arrangement of the bank and the exterior and the exterior design," but would leave same as shown on the preliminary sketches, and Mr. Elkins also directed appellant to complete the plans and specifications with the preliminary sketches theretofore sub-

mitted to the board of directors and approved by them.

The above three counts contain all the statements of what the contract was and who made it, furnishing all the data from which to answer the first question of the proposition under consideration, "What was the complete contract?" From which data it appears that the first allegation is that the president and cashier for the bank requested appellant to make preliminary sketches of a bank building. In the second count the allegation is that portions of the sketches were approved by the board of directors and some portions of the sketches were not approved by the board of directors. The materiality of those portions of the sketches not approved by the board cannot be determined definitely from the petition, though they are described as "the arrangement of the bank and the exterior and the exterior design." This may mean the entire building inside and out. Appellant in his brief refers to them as "minor" changes, while counsel for appellee calls them "important" changes.

[1] The special exception requires us to construe this ambiguity against the pleader and to consider the changes as important and material. The petition does not state fully and clearly in the second count that the directors and appellant agreed upon that portion of the contract which appellant was to perform. In the third count the allegation is that S. J. Elkins, the cashier and a director of the bank, directed appellant to complete the plans and specifications in accordance with the preliminary sketches theretofore submitted to the board of directors and approved by them. But it is alleged, as above indicated, that the directors approved only a portion of the preliminary sketches and disapproved material portions of them. This part of the third count can mean that Elkins directed appellant to do only that which the board of directors had previously contracted for as alleged in the second count, which was not a complete contract. The following clause appears in this third count:

"S. J. Elkins * * * stated to him (appellant) that the directors of said bank had concluded not to make any changes in the arrangement of the bank and the exterior and the exterior design, but would leave same as it had been sketched by plaintiff (appellant) in his preliminary sketches."

[2] If it be conceded that the alleged message from Mr. Elkins bound the board of directors, then the allegation that the board approved all the portions of the preliminary sketches is inconsistent with the remainder of this third count to the effect that Mr. Elkins for the board of directors directed appellant to complete the plans and specifications in accordance with that portion only of the preliminary sketches theretofore approved by the board.

The ambiguity and inconsistency mentioned are violations of the rules of pleading to which attention was called by special exceptions, sustained. The trial court properly sustained the special exceptions. Townes' Tex. Pl. p. 426; Lemmon v. Hanley, 28 Tex. 220; Ry. v. Whitley, 77 Tex. 130, 13 S. W. 853; Hillebrant v. Booth, 7 Tex. 499.

[3] The concession above made, that the message of Mr. Elkins bound the board of directors, cannot properly be made, for there is no averment in the entire petition stating that Mr. Elkins had the authority, real or apparent, to bind them, nor that the board of directors itself approved all the sketches and authorized Mr. Elkins to so inform the appellant. In the face of a special exception, under the rules it is not permitted to infer this material fact. Townes' Tex. Pl. 381, § 5.

[4-6] Even if allegations could be supplied by inferences from other facts stated in the petition, when the sufficiency of the averment is questioned by special exceptions, the petition before us is insufficient when thus assailed. There are no facts stated in the petition from which appellant could infer that the message from Mr. Elkins bound the bank. There is the allegation that Elkins was cashier of the bank and a director. It is a common rule that a cashier of a bank has the apparent power to bind the bank in the usual financial business of the bank. Houston National Exchange Bank v. Gregg County, 202 S. W. 805; Nat. Bank of Greenville v. Greenville Oil Co., 24 Tex. Civ. App. 645, 60 S. W. 828; Bank v. Martin, 70 Tex. 643, 8 S. W. 509, 8 Am. St. Rep. 632. Counsel for appellant apparently relies upon this rule. The building of a two-story brick building is not the ordinary financial business of a bank, neither is the making of a special contract for the professional services of an architect. Pacific Bank v. Stone, 121 Cal. 202, 53 Pac. 634. The petition itself destroys the inference that the cashier was authorized to bind the bank by a contract with the architect, for it alleges that the board of directors assumed the responsibility of dealing with the architect, thus excluding the inference that the board had delegated that authority to the cashier. From the petition before us it does not seem to be intended to infer that the cashier was exercising the authority to bind the bank, but only attempted to bind the board of directors by informing appellant that the board did not desire to change the original sketches. It is not within the apparent scope of the cashier's authority to speak for the board of directors.

Furthermore, the fact alleging that Elkins was a director does not warrant the inference that his statement of the board's conclusion binds the board. There is no allegation that the board decided to accept the sketches previously rejected, nor is there any fact alleged by which the board or bank was estopped and bound by the statement made to appellant by one of the directors or by

benefits received as in the case of Merchants' Ice Co. v. Scott & Dodson, 186 S. W. 418, and the authorities there cited.

[7] Our answer to the first question, "What was the contract?" is that there is no allegation fully, clearly, and consistently alleging what appellant had contracted to do.

[8] The second question of the proposition under consideration, viz. "Do the allegations show that appellant fully performed his part of that contract?" must be answered in the negative. The allegation of performance is: "That acting under said instructions from the board of directors of said defendant bank and from said director and cashier of said defendant bank, plaintiff completed said plans and specifications and expressed same to the defendant by way of Wells Fargo Express Company to Nixon, Texas"—from which it is impossible to infer whether appellant furnished only the sketches, with plans and specifications, which the board of directors had expressly approved or the sketches which it is alleged they did not approve. If appellant furnished only the sketches approved, there were no complete drawings with plans or specifications. If sketches were furnished that had been disapproved, there was no compliance with an agreement.

The trial court properly sustained all of the special exceptions complained of in the six assignments, all of which are overruled.

The judgment is affirmed.