STEPHENS v. STEPHENS.    (No. 2626.)

(Court of Civil Appeals of Texas.    Amarillo.
March 10, 1926.)

1. Divorce ⬤➡93(1)—Petition in divorce suit, which does not specifically allege conduct and acts of defendant justifying divorce, is bad as against general demurrer (Vernon's Sayles' Ann. Civ. St. 1914, art. 4631).

Petition in divorce suit, which does not specifically allege conduct and acts of defendant furnishing legal ground for divorce, is bad as against general demurrer, since Vernon's Sayles' Ann. Civ. St. 1914, art. 4631, does not provide form of pleading, but only names grounds for divorce.

2. Divorce ⬤➡93(4)—Petition alleging acts of stepdaughter and her son with defendant's approval, defendant's refusal to evict stepdaughter from house, and that she told plaintiff to get out, held insufficient to charge abandonment.

Petition in divorce suit by husband, alleging that stepdaughter took groceries and abused plaintiff with approval of wife, that wife refused to evict stepdaughter from house owned by wife, or to move and let stepdaughter occupy it alone, that son of stepdaughter battered tree with baseball bat, and that wife told plaintiff to get out, held insufficient to charge abandonment.

3. Divorce ⬤➡93(3)—Acts of stepdaughter and her son with defendant's approval, defendant's refusal to evict stepdaughter from house, and that she told plaintiff to get out, held insufficient to constitute cruel treatment (Vernon's Sayles' Ann. Civ. St. 1914, art. 4633).

That stepdaughter took groceries and abused husband with approval of wife, that wife refused to evict stepdaughter from house owned by wife, or to move and let stepdaughter occupy it alone, that son of stepdaughter battered tree with baseball bat, and that wife told plaintiff to get out, held insufficient to constitute cruel treatment, since, in absence of physical violence, conduct must be such as to impair health, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4633.

4. Pleading ⬤➡21.

Allegations in divorce petition that defendant abandoned plaintiff, and that plaintiff abandoned defendant, are mutually destructive.

5. Divorce ⬤➡179.

Divorce petition that is subject to general demurrer presents question of fundamental error.

6. Divorce ⬤➡178—Wife held not to waive right of appeal from decree of divorce by accepting $4,000 and releasing all claims against husband's property.

Where judgment of divorce in suit by husband did not attempt to dispose of property, wife, who was not present at trial or when judgment was rendered, did not waive right to appeal by taking $4,000 and releasing all claims against husband's property.

7. Divorce ⬤➡160—Wife's consent to divorce judgment, in consideration of husband's payment of $4,000, held to render judgment void (Vernon's Sayles' Ann. Civ. St. 1914, art. 4633).

Consent by wife to divorce judgment in consideration of husband's payment of $4,000 held to render judgment void on ground of collusion, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4633.

8. Divorce ⬤➡27 (1)—Wife's representation before marriage that she was widow, whose husband was dead, and failure to disclose that second husband was divorced and living, held not basis for divorce on ground of cruel treatment.

Wife's representation before marriage that she was widow, whose husband was dead, and failure to disclose that second husband, from whom she had been divorced, was living, held not basis for divorce on ground of cruel treatment, though it might have been urged in suit to dissolve marriage.

Error from District Court, Wilbarger County; J. A. Nabers, Special Judge.

Suit by W. H. Stephens against Lucy E. Robertson Stephens. Decree for plaintiff, and defendant brings error. Reversed and remanded.

Warlick & Poteet, of Vernon, and H. O. Williams and Bullington, Boone & Humphrey, all of Wichita Falls, for plaintiff in error.

J. Shirley Cook, of Vernon, and Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for defendant in error.

RANDOLPH, J.    This suit was filed by the defendant in error in the district court of Wilbarger county, seeking a divorce from the plaintiff in error. For convenience the parties will hereinafter be designated as in the trial court. On April 21, 1925, the trial court entered judgment decreeing a divorce of the plaintiff from the defendant. Prior to the decree being entered, the defendant filed her answer in the cause. No exception was taken to such judgment, and no notice of appeal given. Within the time provided by law from the date of said judgment, defendant filed her petition for writ of error with the district clerk of Wilbarger county, gave bond, etc., and now brings the case to this court for review.

Plaintiff has made application to us for permission to file his motion to dismiss the writ of error proceedings, and this the defend-

ant contests. We have concluded to permit the filing of such motion, to determine whether or not the .motion presents a question affecting our jurisdiction of the appeal. The defendant in her fourth proposition attacks the judgment of the trial court as being void because:

"It is without any pleadings to support it, and no pleadings ever having been filed by plaintiff in this cause stating a legal ground for divorce, and no pleadings ever having been filed in said cause on which a decree of divorce could be legally rendered."

Leaving off the formal parts, the plaintiff's first amended petition, upon which the judgment was rendered, states his ground for divorce as follows:

"(2) That on or about the 10th day of February, A. D. 1921, plaintiff was lawfully married to the defendant, then a single woman by the name of Lucy E. Robertson; that they continued to live together as husband and wife until on or about the 17th day of February, A. D. 1922, when by reason of the cruel and harsh treatment and improper conduct of defendant toward plaintiff he was forced and compelled to permanently abandon her, since which time they have not lived together as husband and wife.

"(3) That defendant owned a home and residence in the town of Vernon, where she lived when plaintiff married her, and by mutual consent they lived together in defendant's home, and defendant had a married daughter, Mrs. Carrie Easterling, who lived in Vernon, and who had a husband and several children, and, soon after plaintiff and defendant were married and took up their residence as aforesaid, plaintiff discovered that the said Carrie Easterling and her children were appropriating and carrying off the groceries that plaintiff provided for himself and defendant, and thereupon plaintiff remonstrated with defendant, and told her that he was not able to support her daughter's family, and asked her to stop such appropriation of such groceries; but defendant refused to interfere, and still permitted her said daughter to carry off whatever she wanted, and plaintiff was put to great expense and annoyance on that account, which defendant approved and encouraged.

"(4) That on or about the 5th day of August, 1923, her home having burned, the said Carrie Easterling and her family moved into the home of plaintiff and defendant, and took up her residence with them, over the protest of plaintiff, and appropriated anything on the place to her liking, with the full approbation and approval of defendant, and made a practice of abusing plaintiff at least once every day, and defendant refused to reprove her said daughter, or make any effort to have her behave, but rather encouraged her conduct toward plaintiff; that on account of the presence and conduct of said Carrie Easterling and her children life became insupportable for plaintiff in the circumstances, and defendant refused to evict said daughter and her family, but encouraged them to remain with plaintiff and defendant and do as they pleased, and when defendant would not request her daughter and family to move out of the house, plaintiff proposed to defendant that he would rent a suitable residence and move into same with defendant, and she could turn over her residence to her daughter, but this defendant refused to do; that plaintiff had planted some young shade trees in the yard of defendant's residence, and about the time plaintiff left defendant one of Carrie's boys was beating one of said trees with a baseball bat, and plaintiff told him to desist, when Carrie commenced a tirade of abuse of plaintiff, called him ugly names, and commanded him to say nothing to any of her children, when defendant took the part of her daughter and told plaintiff to get up, get out of the house, and leave.

"(5) That at and before the time he proposed marriage to defendant she represented herself to plaintiff as a widow, whose husband was dead, and did not inform plaintiff that she had ever been married since the death of her first husband, and plaintiff relied on her representation that her husband was dead, and did not know that she had been married since the death of her first husband, Mr. Robertson, when in truth and in fact she had since been married to a man by the name of Adams, from whom she was divorced; that if plaintiff had known that she was separated from her husband (and that he was still living) he would not have married defendant; that by reason of the facts hereinbefore alleged defendant was guilty of excesses, cruel treatment, and outrages toward plaintiff of such a nature as to render their living together insupportable."

Among the grounds upon which the courts are authorized to grant divorces by article 4631, V. S. T. C. Stats. 1914, and herein invoked are:

"1. Where either the husband or the wife is guilty of excesses, cruel treatment or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable.

"2. In favor of the husband, where his wife shall have been taken in adultery, or where she shall have voluntarily left his bed and board for the space of three years with the intention of abandonment."

[1] The language of these subdivisions does not provide a form of pleading to be used in the pleading in the case, but is only naming the grounds upon which divorces may be granted. To bring a case within the purview of these subdivisions, the conduct and acts of the party against whom complaint is made must be specifically alleged. The facts must be specifically set out, so that the trial judge may have the opportunity of ascertaining whether or not the alleged cruel treatment, or abandonment, constitutes the conduct contemplated by the statute as cruel treatment, or abandonment; and if the matters of fact alleged in the petition fail to meet that test, and so furnish a legal ground for the divorce prayed for, if proved, then such petition is bad as against a general demurrer, and is subject to attack as being fundamentally erroneous.

[2, 3] These being the rules by which such petition is to be tested, does the petition in this case comply with them? We think not. Considering the general and specific allega-

tions of the petition, we find that it violates the rule which requires that the acts and conduct of the defendant must be specifically alleged, as to abandonment, and as to cruel treatment, no act or word is set out furnishing a statutory ground for a legal judgment of divorce. The fact that defendant's daughter appropriated groceries, and anything else she wanted, was not conduct of the defendant, even though defendant approved such conduct; such approval may not have been dictated by a desire to treat the plaintiff cruelly, so much as a desire that her daughter should have the groceries. Neither are the charges that the defendant's daughter made a practice of abusing plaintiff at least once every day the conduct of defendant, even though defendant failed to reprove her. This, too, is such a vague and general allegation that it cannot be made the basis of a divorce decree. What was done and said by the parties? This is essential to be alleged, that the court, and not the plaintiff, shall be the judge as to whether the matter complained of constitutes the cruel treatment contemplated by the statute.

The defendant owned the house in which she and the plaintiff lived, and the complaint that she refused to evict her daughter and family, or to comply with plaintiff's request that they move out of the house and turn it over to the daughter, is on its face no evidence of cruel treatment. That a grandson of the defendant engaged in the youthful pastime of battering a tree in the yard of defendant's residence with a baseball bat, that the mother of the boy commanded plaintiff to say nothing to her children, and that the defendant took the part of her daughter and told the plaintiff to "get up and get out" of her house, exhibits a state of crimination and recrimination between the parties which certainly cannot be classed as cruel treatment. The law does not contemplate that every such flurry between members of a marital partnership should be a ground for separation by divorce, but the conduct warranting a divorce must be of such character as to reasonably justify the parties in saying that it renders their living together insupportable. No matrimonial bark is supposed to sail at all times in placid waters, but, on the contrary, by its very provisions, the statute recognizes that breakers may lie hidden beneath the surface, that storms will arise and the ship be borne out of its course, and provides that such breaches of domestic felicity shall not constitute grounds for divorce, unless it renders their living together insupportable. In the absence of physical violence, conduct, to constitute cruel treatment, must be such as to impair the health of the party complaining, and this must be established upon "full and satisfactory evidence." Article 4633, V. S. T. C. Stats.; Jones v. Jones (Tex. Civ. App.) 41 S. W. 413; Claunch v. Claunch,

(Tex. Civ. App.) 203 S. W. 930; Rowden v. Rowden, 212 S. W. 302; Eastman v. Eastman, 12 S. W. 1107, 75 Tex. 473; Snodgrass v. Snodgrass (Tex. Civ. App.) 258 S. W. 263.

[4] The plaintiff's petition also charges a double abandonment: First that the defendant abandoned the plaintiff, and then that the plaintiff abandoned the defendant. These allegations are mutually destructive. Rowe v. Horton, 65 Tex. 89; Raming v. Metropolitan St. Ry. Co., 57 S. W. 268, 157 Mo. 477.

[5] A petition that is subject to a general demurrer presents a question of fundamental error. Smith v. Nesbitt (Tex. Civ. App.) 235 S. W. 1105; Borden v. Houston, 2 Tex. 594; Alamo Fire Ins. Co. v. Davis (Tex. Civ. App.) 45 S. W. 604; American Automobile Ins. Co. v. Cone (Tex. Civ. App.) 257 S. W. 961; Davis v. Baker (Tex. Civ. App.) 268 S. W. 766.

[6] Plaintiff by his first counterproposition presents the contention that the defendant waived her right to appeal, and that this court has no jurisdiction of the matters alleged in the petition for writ of error, because defendant consented to the judgment and fully executed the property settlement predicated thereon, and by such conduct acknowledged and consented to the divorce decree, treated the marital relation as dissolved, and has since retained the benefit received, and, further, by failing to give notice of appeal or the desire to sue out a writ of error, and failing to take any steps toward an appeal or writ of error, until after she had, by the conduct aforesaid, ratified the judgment of the trial court granting such divorce, and that she is now estopped to seek a review of such judgment. This contention is also brought before us by the motion to dismiss the writ of error, which motion is supported by affidavits.

We recognize the rule, as laid down in the authorities cited and quoted by the plaintiff, that a party to a judgment may waive his right of review of such judgment by an appellate court, by accepting benefits under such judgment, or by performing its decrees; but such rule does not apply to the question presented by this record, and we do not, in this connection, admit the application of the rule to a judgment in which the state is interested. A summary of the evidence set out in the affidavits attached to the plaintiff's motion to dismiss is as follows: · · ·

The defendant was not present at the trial, or when the judgment was rendered. A settlement of the property matters between plaintiff and defendant was effected by her son, E. P. Robertson, and an attorney of the plaintiff, in which the plaintiff paid Robertson $4,000 upon the understanding that it was a settlement of any claim his mother had to appellant's property; the plaintiff's attorney insisting that she had no legal claim to any of plaintiff's property. This money

was paid with the understanding that defendant would execute a release of all claims to plaintiff's property. The son deposited this money to his mother's credit in the bank, and later presented the deed to her for her signature and acknowledgment. She at first demurred to executing it, but finally did so, as claimed by her, because her son had given his word that it would be done. This money was applied in part to the payment of indebtedness on defendant's land. Defendant has since filed suit in the district court of Wilbarger county to cancel such deed, and has in her pleadings tendered return of the $4,000 to the plaintiff. The filing of this suit to cancel, and the making of tender by defendant, can have no effect here. The question here is the effect that is to be given to the payment and acceptance of the $4,000 on the judgment for divorce.

We make the distinction between the judgment and the transaction of the payment of the $4,000 and the execution of the deed by the defendant to the plaintiff, but we do not intend, by anything said here, to anticipate action on the suit to cancel the deed, but only as to the effect on the divorce judgment. There is not a single term or word of the judgment that attempts to make any disposition of the property rights of the parties, and such settlement could not be predicated upon the judgment, unless it is to be so held by the payment of the $4,000.

[7] If there is any meaning to be given the language of plaintiff's motion to dismiss, involving a charge that, in consideration of the payment to her of the $4,000, the defendant consented that the divorce judgment should be rendered, then such judgment would be absolutely void on the ground of collusion (article 4633, V. S. T. C. Stats.), and could not bind her and effectuate and make valid a judgment that the law says shall not be rendered. If, on the other hand, the meaning should be given the motion and the transaction which it bears on its face, that the $4,000 was paid to release plaintiff's property from any claim that the defendant might assert against it, then it clearly has not and cannot have any connection with the divorce judgment. We therefore overrule plaintiff's motion to dismiss the writ of error proceedings.

[8] There is another question that we will notice before closing this opinion, for fear that the parties may think we have overlooked it. That question is: Does the fact that Mrs. Stephens represented that she was a single woman, a widow, whose husband had died, and her failure to disclose that her second husband, from whom she had been divorced, was living, if such are the facts, as alleged by the plaintiff, add any strength to the petition? If this representation and concealment is of any use, it should have

been urged in a suit to dissolve the bonds of matrimony and to declare the marriage null and void. Certainly an antecedent representation and concealment could not be taken as a present cruel treatment.

The questions discussed are controlling in their effect. The other assignments will not be considered, as they cannot in all probability arise again on another trial.

For the error of the trial court in rendering judgment for divorce upon the petition discussed, we reverse and remand the said judgment.